## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA (HAMMOND)

---

ASANTI RODGERS,
    Plaintiff,

vs.

TRANS UNION, LLC; EQUIFAX, INC.;
and EQUIFAX INFORMATION
SERVICES, LLC;
    Defendants.

CASE NO.  2:25-cv-00242-PPS-AZ

Judge Philip P. Simon
Magistrate Abizer Zanzi



**-FILED-**

JUN 1 2 2026

Al ——————— M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

---

## TRANS UNION LLC'S RESPONSES TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

---

Defendant Trans Union LLC ("Trans Union"), by counsel, responds to Plaintiff's First Set Of Interrogatories To Trans Union LLC (the "Interrogatories") as follows:

**INTERROGATORY NO. 1**:  Identify all personal identifying information reported in Plaintiff's consumer file, including but not limited to Plaintiff's name, Social Security number, addresses, phone numbers, and email addresses, and for each item of information, identify the source from which it was obtained and the date it was first reported.

**ANSWER**:  Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations.  As such, this

Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that the burden an expense necessary to "identify the source from which it was obtained and the date it was first reported" would not be proportional to the needs of the case. For this independently sufficient reason, this Interrogatory seeks information beyond the scope of Rule 26(b). Trans Union further objects to this Interrogatory on the grounds that Plaintiff has equal access to this information as it is her own personal information.

**INTERROGATORY NO. 2**: Describe in detail the internal procedures and automated systems used to investigate Plaintiff's disputes dated 01/31/2025, 02/14/2025, 02/19/2025 and The March 14, 2025 Formal Demand.

**ANSWER**: Reducing all of Trans Union's policies and procedures to the form of an Interrogatory answer is impractical, if not impossible, even if limited to the procedures for reporting the subject Account in the manner that it did. Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its files. Trans Union has also developed detailed procedures for providing consumers with access to their credit files and a means to request reinvestigations if they disagree with items appearing in their credit files. Trans Union has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Trans Union in the overall process that assures the maximum possible accuracy of such reports. Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their credit file may submit disputes of those items to Trans Union. Trans Union actively encourages consumers to request file disclosures, review them, and submit disputes of any items believed to be inaccurate or incomplete in order to assure that the information reported by

Trans Union is as accurate as possible. Consumers can submit disputes to Trans Union in many convenient ways, including online, by mail, by telephone or even in person at Trans Union's consumer relations facilities in Crum Lynne, Pennsylvania. Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures.

When processing a written dispute, an agent will first obtain sufficient identifying information about the consumer from the dispute to allow the agent to access the consumer's Trans Union's file. After accessing the consumer's file, the agent will review the contents of the consumer's communication to determine the type of assistance being requested. If the dispute is written (as opposed to telephone or internet), after determining the action the consumer is seeking, the agent will then review the entire content of the consumer's written dispute, including any supporting documents provided. If the consumer's communication to Trans Union included any supporting documents, the agent will first determine if the documents and letter can be used to make the update the consumer is requesting. If the information submitted by a consumer does not allow Trans Union to update the consumer's file, Trans Union will contact the source of the disputed information (the "data furnisher").

Specifically, Trans Union contacts the data furnisher explaining the consumer's dispute and asks for a response concerning the accuracy or completeness of the disputed items. Trans Union typically contacts data furnishers via an "automated consumer dispute verification" form (commonly referred to as an "ACDV"). ACDVs are transmitted to data furnishers through a system known as e-OSCAR (Online Solution for Complete and Accurate Reporting). e-OSCAR is a browser-based, Metro 2 compliant system developed by Equifax, Experian, Innovis, and Trans Union that allows consumer reporting agencies ("CRAs") to communicate directly with data

furnishers. e-OSCAR was designed to provide an online solution for processing ACDVs and it allows for fast and efficient resolution of consumer disputes. When a CRA sends an ACDV through the e-OSCAR system, it is routed to the appropriate data furnisher.

When a CRA transmits an ACDV to a data furnisher, it will include all relevant information about the dispute to ensure that the data furnisher has the information necessary to provide an accurate response. An image of the dispute letter and supporting documents may also be included with the ACDV. An ACDV will generally contain identifying information about the consumer and specific language that tells the data furnisher the nature of the consumer's dispute and a description of all information that the CRA has about the consumer's account with the data furnisher. The dispute language, which is included on ACDVs transmitted through the e-OSCAR system, is widely known and accepted throughout the credit reporting industry. There is specific language used by CRAs to describe disputes, as well as language for data furnishers to describe the results of their investigations. The specific dispute language contained on an ACDV describes to the data furnisher the reason the consumer believes the information being reported by the furnisher is inaccurate or incomplete.

After the data furnisher completes its investigation, it returns the ACDV to Trans Union, including the results of the data furnisher's investigation. Trans Union then compares the data furnisher's response to the information contained in Trans Union's records and the item is either verified, updated, or deleted in accordance with Trans Union's processes and procedures and consistent with the data furnisher's response. At the conclusion of the investigation, the results of the reinvestigation are sent to the consumer. The investigation results also contain a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the reinvestigation, including contacting the data furnisher directly or adding a 100-word statement to

the consumer's credit file regarding the disputed account. Trans Union uses these procedures to train its employees and third-party contractors on managing communications with consumers and disputes. Trans Union requires its employees and third-party contractors follow its procedures when processing consumer disputes.

Finally, Trans Union states that documents from which further answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade secret information because it seeks information regarding trade secret Trans Union policies, procedures and/or systems.

**INTERROGATORY NO. 3**: Identify the specific 3-digit e-OSCAR dispute codes used to process each of Plaintiff's 2025 disputes and state the factual definition for each code used.

**ANSWER**: Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

**INTERROGATORY NO. 4**: For each dispute submitted by Plaintiff in 2025, describe all steps taken to verify the accuracy of the information, including which furnishers were contacted and the substance of those communications.

**ANSWER**: Reducing all of Trans Union's policies and procedures to the form of an Interrogatory answer is impractical, if not impossible, even if limited to the procedures for reporting the subject Account in the manner that it did. Virtually every action undertaken by Trans

Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its files. Trans Union has also developed detailed procedures for providing consumers with access to their credit files and a means to request reinvestigations if they disagree with items appearing in their credit files. Trans Union has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Trans Union in the overall process that assures the maximum possible accuracy of such reports. Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their credit file may submit disputes of those items to Trans Union. Trans Union actively encourages consumers to request file disclosures, review them, and submit disputes of any items believed to be inaccurate or incomplete in order to assure that the information reported by Trans Union is as accurate as possible. Consumers can submit disputes to Trans Union in many convenient ways, including online, by mail, by telephone or even in person at Trans Union's consumer relations facilities in Crum Lynne, Pennsylvania. Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures.

When processing a written dispute, an agent will first obtain sufficient identifying information about the consumer from the dispute to allow the agent to access the consumer's Trans Union's file. After accessing the consumer's file, the agent will review the contents of the consumer's communication to determine the type of assistance being requested. If the dispute is written (as opposed to telephone or internet), after determining the action the consumer is seeking, the agent will then review the entire content of the consumer's written dispute, including any supporting documents provided. If the consumer's communication to Trans Union included any supporting documents, the agent will first determine if the documents and letter can be used to

make the update the consumer is requesting. If the information submitted by a consumer does not allow Trans Union to update the consumer's file, Trans Union will contact the source of the disputed information (the "data furnisher").

Specifically, Trans Union contacts the data furnisher explaining the consumer's dispute and asks for a response concerning the accuracy or completeness of the disputed items. Trans Union typically contacts data furnishers via an "automated consumer dispute verification" form (commonly referred to as an "ACDV"). ACDVs are transmitted to data furnishers through a system known as e-OSCAR (Online Solution for Complete and Accurate Reporting). e-OSCAR is a browser-based, Metro 2 compliant system developed by Equifax, Experian, Innovis, and Trans Union that allows consumer reporting agencies ("CRAs") to communicate directly with data furnishers. e-OSCAR was designed to provide an online solution for processing ACDVs and it allows for fast and efficient resolution of consumer disputes. When a CRA sends an ACDV through the e-OSCAR system, it is routed to the appropriate data furnisher.

When a CRA transmits an ACDV to a data furnisher, it will include all relevant information about the dispute to ensure that the data furnisher has the information necessary to provide an accurate response. An image of the dispute letter and supporting documents may also be included with the ACDV. An ACDV will generally contain identifying information about the consumer and specific language that tells the data furnisher the nature of the consumer's dispute and a description of all information that the CRA has about the consumer's account with the data furnisher. The dispute language, which is included on ACDVs transmitted through the e-OSCAR system, is widely known and accepted throughout the credit reporting industry. There is specific language used by CRAs to describe disputes, as well as language for data furnishers to describe the results of their investigations. The specific dispute language contained on an ACDV describes

to the data furnisher the reason the consumer believes the information being reported by the furnisher is inaccurate or incomplete.

After the data furnisher completes its investigation, it returns the ACDV to Trans Union, including the results of the data furnisher's investigation. Trans Union then compares the data furnisher's response to the information contained in Trans Union's records and the item is either verified, updated, or deleted in accordance with Trans Union's processes and procedures and consistent with the data furnisher's response. At the conclusion of the investigation, the results of the reinvestigation are sent to the consumer. The investigation results also contain a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the reinvestigation, including contacting the data furnisher directly or adding a 100-word statement to the consumer's credit file regarding the disputed account. Trans Union uses these procedures to train its employees and third-party contractors on managing communications with consumers and disputes. Trans Union requires its employees and third-party contractors follow its procedures when processing consumer disputes.

Finally, Trans Union states that documents from which further answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade secret information because it seeks information regarding trade secret Trans Union policies, procedures and/or systems.

**INTERROGATORY NO. 5**: State the specific factual and legal basis for issuing four (4) separate requests for "human trafficking" documentation in response to Plaintiff's disputes dated

January 31, February 14, and February 19, 2025, and the March 14, 2025 Formal Demand; further, explain why this specific documentation was deemed a mandatory "requirement" to process said disputes when the primary basis of Plaintiff's correspondence was accuracy and identity theft.

**ANSWER**:   Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union further objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade secret information because it seeks information regarding trade secret Trans Union policies, procedures and/or systems.

**INTERROGATORY NO. 6**:   Identify and explain the systemic cause for every contradictory response issued to Plaintiff in 2025, including but not limited to instances where Defendant represented a dispute as "unable to be processed" while simultaneously modifying account information; Further identify any specific systems, software logic, Single Data Fabric synchronization errors, automated letter-trigger processes, or other internal defects, processes, or procedures responsible for these conflicting disclosures.

**ANSWER**:   Trans Union denies that there were any contradictory responses issued to Plaintiff in 2025, but states that documents from which the answer to the unobjectionable portion

of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.

**INTERROGATORY NO. 7**: Describe your procedures for handling identity theft claims under 15 U.S.C. §1681c-2 and explain specifically how those procedures were applied to Plaintiff's 2025 disputes.

**ANSWER**:   Trans Union objects to this Interrogatory on the grounds that the allegations in the Complaint are not related to identity theft claims, and, as such, such Interrogatory is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.

**INTERROGATORY NO. 8**:   Explain why Plaintiff's credit score did not increase following your representation that multiple derogatory accounts had been deleted, including all factors, models, and data used in calculating Plaintiff's score at that time.

**ANSWER**:   Trans Union objects to this Interrogatory on the grounds that it calls for speculation.   Trans Union further objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).   Trans Union also objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.   Finally, Trans Union objects to this Interrogatory on the grounds that it does not maintain copies of the consumer reports it provides to third parties and the burden and expense necessary to manually translate and interpret the raw data it does maintain would outweigh the proposed discovery's likely benefit.

**INTERROGATORY NO. 9**:   Identify each person (name, title, employee ID, and location) who participated in the investigation of Plaintiff's disputes in 2025 and describe their specific role in the process.

**ANSWER**:   Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

**INTERROGATORY NO. 10**: State whether the accounts you represented as deleted on or about March 3, 2025, continued to be included in any form in Plaintiff's credit score calculation and, if so, explain how and why.

**ANSWER**:    Trans Union objects to this Interrogatory on the grounds that it calls for speculation.    Trans Union further objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).  Trans Union also objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.  Finally, Trans Union objects to this Interrogatory on the grounds that it does not maintain copies of the consumer reports it provides to third parties and the burden and expense necessary to manually translate and interpret the raw data it does maintain would outweigh the proposed discovery's likely benefit.

**INTERROGATORY NO. 11**: Regarding the MOHELA/U.S. Department of Education accounts, explain why Defendant failed to update and/or remove these tradelines in 2024 upon receipt of discharge notices from the U.S. Department of Education; further, explain why these accounts remained on Plaintiff's consumer report during the 2025 dispute period, state the current reporting status of each account, and, if they have since been permanently deleted, identify the specific date and internal trigger for such removal.

**ANSWER**:    Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans

Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that the term "internal trigger" is unclear and undefined by the Interrogatories.

**INTERROGATORY NO. 12**: State your net worth and total annual revenue for the years 2023, 2024, and 2025.

**ANSWER**:  Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are located at https://investors.transunion.com/financials.

Trans Union objects that this Interrogatory is unclear because the term "net worth" is an accounting term whose value can change based on the financial methods used for its calculation. Trans Union further objects that this Interrogatory is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations.  Notably, there has not and likely will not be a finding that Trans Union is liable for punitive damages in this matter, but even if there is, Trans Union's net worth for prior years would not be applicable.  As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).    Trans   Union further objects to this Interrogatory on the grounds that it seeks publicly available information to which Plaintiff has equal access and the burden and/or expense of ascertaining the information is substantially the same

**INTERROGATORY NO. 13**: Identify every account that was removed from Plaintiff's consumer file between January 1, 2025, and the present, and for each account state whether the

data was permanently deleted from Plaintiff's consumer file and Defendant's internal systems or suppressed and retained within Plaintiff's consumer file in Defendant's internal database.

**ANSWER**:    Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).

**INTERROGATORY NO. 14**:   State whether Defendant experienced any data breach, cybersecurity incident, unauthorized access event, or compromise of consumer data from January 1, 2020, through the present, including but not limited to incidents involving internal systems, third-party vendors, data transfer platforms, or software vulnerabilities; further, state whether Plaintiff's personal identifying information was involved in any such incident and describe all actions taken in response.

**ANSWER**:    Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that Plaintiff

has equal access to the information and is attempting to burden and harass Trans Union. Trans Union further objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.

**INTERROGATORY NO. 15**: For every account that was deleted and then reinserted into Plaintiff's credit file from January 1, 2020 to the present, identify each account by name and account number, state the exact date the account was reinserted, state whether a "Notice of Reinsertion" was sent to Plaintiff and, if so, the date it was sent and the method of delivery, and describe the "certification of accuracy" received from the furnisher, including the date such certification was received and the identity of the person or entity who provided it.

**ANSWER**: Trans Union states that documents from which the answer to the unobjectionable portion of this Interrogatory may be determined, derived or ascertained are Trans Union's business records, its Consumer Relations documents, Bates stamped TU 000001 to TU 000417.

Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).

**INTERROGATORY NO. 16**: Identify the specific source, database, or third-party vendor from which Defendant obtained Plaintiff's email address used for the March 2025 correspondence and explain why Defendant utilized this unsolicited contact method for dispute-

related disclosures when Plaintiff did not provide that email address during the 2025 dispute process.

**ANSWER**: Trans Union objects to this Interrogatory on the grounds that it is unclear because does not identify a particular correspondence. Trans Union further objects to this Interrogatory on the grounds that is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).

**INTERROGATORY NO. 17**: Identify the person or automated trigger that placed the September 19, 2025 fraud alert on Plaintiff's file and explain why the formal notice of this alert, produced by Defendant and provided to Plaintiff via counsel, contained a mailing address that Plaintiff had previously disputed; further, state the factual basis for initiating the fraud alert after the filing of this lawsuit.

**ANSWER**: Trans Union objects to this Request on the grounds that the terms "automated trigger" "September 19, 2025 fraud alert" and "initiating the fraud alert" are unclear, undefined by the Interrogatories, and are impermissibly excessive because they appear to seek information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory appears to seek information not relevant to this matter and beyond the scope Rule 26(b). Trans Union further objects to this Interrogatory on the grounds that it seeks information protected by the

attorney-client privilege, the attorney work-product doctrine, the joint-defense privilege or any other applicable privilege.

**INTERROGATORY NO. 18**: State the legal and factual basis for requiring Plaintiff to provide government-issued identification via email to remove a fraud alert that Plaintiff explicitly notified Defendant's counsel she did not request, and explain why this demand for sensitive identification was made through Defendant's legal counsel, prior to the commencement of formal discovery, rather than through Defendant's standard consumer dispute channels or statutory verification procedures.

**ANSWER**:   Trans Union objects to this Interrogatory on the grounds that is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union further objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, the joint-defense privilege or any other applicable privilege.

**INTERROGATORY NO. 19**:   Describe all training provided to dispute verifiers, including any quotas, speed metrics, or performance-based compensation that penalizes manual review or rewards volume.

**ANSWER**:   Reducing all of Trans Union's policies and procedures to the form of an Interrogatory answer is impractical, if not impossible, even if limited to the procedures for reporting the subject Account in the manner that it did. Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum

possible accuracy of the data in its files, including the training of its employees and third-party contractors. Trans Union requires that all consumer dispute requests be processed in accordance with an established set of reinvestigation policies and procedures. When processing a written dispute, an agent will first obtain sufficient identifying information about the consumer from the dispute to allow the agent to access the consumer's Trans Union's file. After accessing the consumer's file, the agent will review the contents of the consumer's communication to determine the type of assistance being requested. If the dispute is written (as opposed to telephone or internet), after determining the action the consumer is seeking, the agent will then review the entire content of the consumer's written dispute, including any supporting documents provided. If the consumer's communication to Trans Union included any supporting documents, the agent will first determine if the documents and letter can be used to make the update the consumer is requesting. If the information submitted by a consumer does not allow Trans Union to update the consumer's file, Trans Union will contact the source of the disputed information (the "data furnisher").

Specifically, Trans Union contacts the data furnisher explaining the consumer's dispute and asks for a response concerning the accuracy or completeness of the disputed items. Trans Union typically contacts data furnishers via an "automated consumer dispute verification" form (commonly referred to as an "ACDV"). ACDVs are transmitted to data furnishers through a system known as e-OSCAR (Online Solution for Complete and Accurate Reporting). e-OSCAR is a browser-based, Metro 2 compliant system developed by Equifax, Experian, Innovis, and Trans Union that allows consumer reporting agencies ("CRAs") to communicate directly with data furnishers. e-OSCAR was designed to provide an online solution for processing ACDVs and it

allows for fast and efficient resolution of consumer disputes. When a CRA sends an ACDV through the e-OSCAR system, it is routed to the appropriate data furnisher.

When a CRA transmits an ACDV to a data furnisher, it will include all relevant information about the dispute to ensure that the data furnisher has the information necessary to provide an accurate response. An image of the dispute letter and supporting documents may also be included with the ACDV. An ACDV will generally contain identifying information about the consumer and specific language that tells the data furnisher the nature of the consumer's dispute and a description of all information that the CRA has about the consumer's account with the data furnisher. The dispute language, which is included on ACDVs transmitted through the e-OSCAR system, is widely known and accepted throughout the credit reporting industry. There is specific language used by CRAs to describe disputes, as well as language for data furnishers to describe the results of their investigations. The specific dispute language contained on an ACDV describes to the data furnisher the reason the consumer believes the information being reported by the furnisher is inaccurate or incomplete.

After the data furnisher completes its investigation, it returns the ACDV to Trans Union, including the results of the data furnisher's investigation. Trans Union then compares the data furnisher's response to the information contained in Trans Union's records and the item is either verified, updated, or deleted in accordance with Trans Union's processes and procedures and consistent with the data furnisher's response. At the conclusion of the investigation, the results of the reinvestigation are sent to the consumer. The investigation results also contain a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the reinvestigation, including contacting the data furnisher directly or adding a 100-word statement to the consumer's credit file regarding the disputed account. Trans Union uses these procedures to

train its employees and third-party contractors on managing communications with consumers and disputes. Trans Union requires its employees and third-party contractors follow its procedures when processing consumer disputes.

Trans Union objects to this Interrogatory on the grounds that is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that it seeks confidential, proprietary and/or trade-secret information because it seeks information regarding Trans Union's trade-secret policies, procedures and/or systems.

**INTERROGATORY NO. 20**: Describe all revenue-generating agreements or "Single Data Fabric" arrangements involving the monetization or sharing of Plaintiff's consumer data with third parties and co-defendants.

**ANSWER**: Trans Union objects to this Interrogatory on the grounds that the terms "all revenue-generating agreements or "Single Data Fabric" arrangements" are unclear because they are not defined by the Interrogatories or by Trans Union in the regular course of business. Trans Union further objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union also objects to this Interrogatory on the grounds that it appears to seek confidential,

proprietary and/or trade-secret information because it appears to seek information regarding Trans Union's confidential business relationships.

**INTERROGATORY NO. 21**: Explain why Defendant issued a reinsertion notice regarding the Discover Bank account on or about July 10, 2025, after previously representing on or about March 15, 2025, that the account was "verified as accurate and updated," and state whether Defendant contends the account was ever deleted prior to the issuance of that reinsertion notice.

**ANSWER**: Trans Union objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).

**INTERROGATORY NO. 22**: State the factual and internal policy basis for Defendant's representation that a disputed account can be simultaneously "verified as accurate and updated," and explain how an account requiring modification or updating to achieve accuracy could have been considered accurate at the commencement of the investigation.

**ANSWER**: Trans Union objects to this Interrogatory on the grounds that it does not identify a particular account, a particular consumer or a particular dispute. Trans Union further objects to this Interrogatory on the grounds that it seeks a response regarding a hypothetical. Trans Union also objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible

purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b).

**INTERROGATORY NO. 23**:  Describe all ways in which Defendant has used, sold, licensed, shared, or otherwise disseminated Plaintiff's personal identifying information to any third party outside of the preparation and furnishing of consumer reports, and identify each such third party, the purpose of the disclosure, and any consideration or value received.

**ANSWER**:    Trans Union objects to this Interrogatory on the grounds that the terms "all ways" "used, sold, licensed, shared" and "outside of the preparation and furnishing of consumer reports" are unclear, undefined by the Interrogatories and confusing. Trans Union also objects to this Interrogatory on the grounds that it is impermissibly excessive because it seeks information unrelated to and beyond the scope of Plaintiff's claims, which are limited to Trans Union's reporting and reinvestigation of account information "without a permissible purpose" within the FCRA's applicable two-year statute of limitations. As such, this Interrogatory seeks information not relevant to this matter and beyond the scope Rule 26(b). Trans Union further objects to this Interrogatory on the grounds that it could be read to seek confidential, proprietary and/or trade-secret information because it could be read to seek information regarding Trans Union's confidential business relationships.

Respectfully submitted,

*[signature]*

_____

Scott E. Brady, Esq. (30534-49)
Nermy J. Winner, Esq. (38591-49)
Quilling, Selander, Lownds, Winslett &
 Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN  46290
Telephone:  317-497-5600, Ext. 602 & 605
Fax:  317-899-9348
E-Mail:  sbrady@qslwm.com
E-Mail:  nermy.winner@qslwm.com

*Counsel for Defendant Trans Union LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, and/or email, on the **24ᵗʰ day of April, 2026**, properly addressed as follows:

| **Pro Se Plaintiff** | **for Defendant Equifax, Inc and Equifax Information Services, LLC** |
|---|---|
| Asanti Rodgers<br>1128 Burr Street<br>Gary, IN 46406<br>24princesslove@gmail.com | Neil R. Peluchette, Esq.<br>Taft Stettinius & Hollister, LLP<br>One Indiana Square, Suite 3500<br>Indianapolis, IN 46204<br>npeluchette@taftlaw.com |

Scott E. Brady, Esq. (30534-49)
Nermy J. Winner, Esq. (38591-49)
Quilling, Selander, Lownds, Winslett &
 Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600, Ext. 602 & 605
Fax: 317-899-9348
E-Mail: sbrady@qslwm.com
E-Mail: nermy.winner@qslwm.com

*Counsel for Defendant Trans Union LLC*