

FILED

JUN 0 8 2026

At_____M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ASANTI RODGERS | ) | |
| | ) | CASE NO. 2:25-cv-00242-PPS-AZ |
| Plaintiff, | ) | |
| V. | ) | |
| TRANSUNION, LLC | ) | |
| EQUIFAX, INC | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SEPARATE STATUS REPORT

Plaintiff circulated a proposed Joint Status Report to counsel for all Defendants and requested comments, revisions, and additions in sufficient time to meet the Court's filing deadline defendants did not respond. Plaintiff submits this Separate Status Report to ensure compliance with the Court's Order and filing deadline.

Plaintiff Asanti Rodgers, proceeding pro se, respectfully submits this Separate Status Report in advance of the Status Conference scheduled for June 15, 2026.

I. RECENT PROCEDURAL HISTORY

Following the parties' status conference/discovery hearing, the Parties continued to engage in written discovery.

Thereafter, Magistrate Judge Zanzi issued Findings and Recommendation concerning Defendant Equifax, Inc.'s Motion to Dismiss and Plaintiff's Motion for Leave to File a First Amended Complaint. No objections were filed to the Findings and Recommendation.

On May 27, 2026, the Court adopted the Findings and Recommendation in full, denied Equifax, Inc.'s Motion to Dismiss as moot, and granted in part Plaintiff's Motion for Leave to File a First Amended Complaint. Plaintiff was granted leave to proceed with her individual claims and was given until June 24, 2026, to file an amended complaint consistent with the Court's ruling.

II. STATUS OF DISCOVERY

Plaintiff's Position:

Plaintiff has served written discovery and has reviewed Defendants' discovery responses and productions. Plaintiff contends that certain responses and productions remain deficient, including materials relating to dispute investigations, reinvestigation records, consumer disclosures, and related communications.

Plaintiff previously served a discovery deficiency letter upon Defendant TransUnion identifying alleged deficiencies in its responses and production. Plaintiff did not receive a response from TransUnion to that deficiency notice. Plaintiff has since responded to TransUnion's discovery deficiency letter directed to Plaintiff.

Plaintiff is also serving a discovery deficiency letter upon Equifax regarding deficiencies in Equifax's discovery responses and production. As of the filing of this Status Report, Equifax has not yet had an opportunity to respond.

Copies of the parties' recent discovery correspondence are attached as Exhibits A through D for the Court's reference regarding the current status of discovery disputes. Plaintiff is not presently seeking relief through this Status Report but wishes to advise the Court that discovery disputes remain unresolved and may require future court intervention if the Parties are unable to resolve them.

## III. REMAINING DISCOVERY AND PROPOSED TIMELINE

Plaintiff's Position:

Plaintiff is prepared to proceed diligently and has consistently managed all case requirements to move this matter toward resolution. Plaintiff intends to file her amended complaint on or before June 24, 2026. Following the filing of the amended complaint, Plaintiff anticipates serving additional written discovery tailored to the operative pleading. Plaintiff does not presently believe an extension of the current discovery schedule is necessary but reserves the right to revisit that issue if discovery disputes remain unresolved.

## IV. SETTLEMENT AND ALTERNATIVE DISPUTE RESOLUTION (ADR)

The Parties have not engaged in active settlement discussions. However, pursuant to the Court's scheduling order, the Parties successfully selected a mediator on April 24, 2026, to facilitate future resolution efforts if needed.

## V. EXHIBITS

Exhibit A – TransUnion's Discovery Deficiency Letter to Plaintiff

Exhibit B – Plaintiff's Discovery Deficiency Letter to TransUnion

Exhibit C – Plaintiff's Response to TransUnion's Discovery Deficiency Letter

Exhibit D – Plaintiff's Discovery Deficiency Letter to Equifax

DATE: 06/08/2026

Respectfully Submitted,

Asanti Rodgers, PRO SE
1128 Burr ST,
Gary, IN 46406

Exhibit A

# QSLWM

Quilling, Selander, Lownds,
Winslett & Moser, P.C.

May 13, 2026

VIA FIRST CLASS MAIL & E-MAIL
24princesslove@gmail.com

Asanti Rodgers
1128 Burr Street
Gary, IN 46406

> **RE:** ***Asanti Rodgers v. Trans Union LLC, et al.***
> U.S. District Court, Northern District of Indiana (Hammond)
> Case No. 2:25-cv-00242-PPS-AZ

Dear Ms. Rodgers:

Thank you for forwarding your responses to Trans Union's First Set of Interrogatories, Requests for Production and Requests for Admission (collectively, the "Requests"). We have reviewed the responses and ask that you withdraw your objections and supplement as explained below. In order to keep this case moving forward, please provide your written responses by June 5, 2026.

As a general matter, Interrogatories 4, 5, 6 – 15, 17-20, as well as Requests for Production 1, 3, 7-12, 14, 15, 17, and 18, among others as detailed below, seek basic information relating to Plaintiff's claims. As to those that you believe seek information that exceeds those claims – please accept them as narrowed to Plaintiff's claims or other activities that could relate to the credibility of Plaintiff's assertions as to those claims.

Please provide all such information and documents as so narrowed, or confirm that notwithstanding your objections, all such responsive information and documents as narrowed in your possession, custody and control have been produced. As you are aware, pursuant to amended Federal Rule of Civil Procedure ("Rule") 34, "[a]n objection [to a request for production] must state whether any responsive materials are being withheld on the basis of that objection." *See* Rule 34(b)(2)(C). Beyond this, Rule 37 states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *See* Rule 37(a)(4). Further, pursuant to Rule 36(a)(4), Requests for Admission must specifically deny or state in detail why the answering party cannot truthfully admit or deny. Please supplement your responses to the Requests for Admission with a proper admission or denial of each Request.

Furthermore, please specifically supplement your responses to the following:

## INTERROGATORIES

**Interrogatory No. 1**: You objected to providing your social security number pursuant to Federal Rule of Civil Procedure 5.2. However, that rule applies to filings made with the court on the public docket. This rule does not apply to discovery requests. Please withdraw your objection and supplement your response immediately.

**Interrogatory No. 2.** Next to the Gary, Indiana address you provided, you state "start to present (to the best of my knowledge)" – this language is confusing and does not provide a date. Please provide an accurate numerical date for your residency at this address. Further, the Houston, Texas address you provided dates back to 2022 – this is 4 years ago, not 10. Please provide your residential history for the past **10** years.

**Interrogatory No. 3.** This Interrogatory seeks basic and fundamental information regarding Plaintiff's income, which is directly relevant to Plaintiff's creditworthiness, causation and claimed damages. *See, e.g., Nixon v. Enter. Car Sales Co.,* No. 4:09-cv-1896 HEA, 2011 WL 1627170, at *2 (E.D. Mo. Apr. 26, 2011) ("With regard to defendant's discovery requests seeking information concerning plaintiff's income from alimony, child support, and employment, such information is relevant to this case because it would tend to show whether plaintiff truthfully represented her income in her credit application."). your refusal to provide your income information and employment history is improper. Please withdraw Plaintiff's objections and provide the information requested and provide the full names and addresses of each employer and his salary and rate of pay at each job.

**Interrogatory No. 16.** This Interrogatory seeks information regarding monthly statements of bank accounts, credit card accounts, or other financial accounts. This Request is relevant to determine your credibility regarding your claims, more importantly, the identity theft claims. Please withdraw your objections and provide a complete response to this Interrogatory.

## REQUESTS FOR PRODUCTION

**Request No. 6**: This Request seeks information regarding any support you may have for monetary damages. You list several documents stating that "you will produce" such documents. However, these documents were not produced. If you have any documents that support your claim for monetary damages, please produce them immediately.

**Request No. 13:** This Request seeks financial statements and tax returns, which are relevant to your creditworthiness, causation and damages claimed. A party's tax returns, or other tax information is generally relevant (and therefore generally discoverable) where that party's claims placed his financial situation in issue in the case. *See generally Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 75 (7th Cir.1992) (compelling disclosure of plaintiff's tax returns when plaintiff's claims placed his income at issue). *Simon v. Whichello,* No. 1:05-CV-333, 2006 WL 2042154, at *2 (N.D. Ind. July 18, 2006). Your refusal to provide your income information and employment history is improper. Please withdraw your objections and provide the information requested and provide the full names and addresses of each employer and your salary and rate of pay at each job. For purposes of this Request, please provide your federal tax returns for the last two (2) years. Alternatively, please

advise if you would be willing to produce your IRS Tax Transcripts, IRS Form W-2s and/or your pay stubs for this same period of time.

**Request No. 16:** This Request seeks information regarding monthly statements of bank accounts, credit card accounts, or other financial accounts. This Request is relevant to determine your identity and credibility of several of your claims. Please withdraw your objections and provide the requested documents.

**Request No. 19:** This Request seeks information regarding claims or suits relating to credit reporting in the past 10 years. You have indicated that you were involved in litigation with Credit Acceptance Corporation and Discover Bank, however, you have failed to provide responsive documents related to this Request. Please provide the relevant responsive documents immediately.

Sincerely,

QUILLING SELANDER LOWNDS
WINSLETT & MOSER, P.C.

Nermy Winner

NJW/ca

Exhibit B

Via E-Mail to All Counsel of Record for Trans Union LLC

May 22, 2026

Scott E. Brady & Nermy Winner,
10333 N. Meridian St., Suite 200
Indianapolis, IN 46290

RE: Asanti Rodgers v. Trans Union LLC, et al.

U.S. District Court, Northern District of Indiana (Hammond Division)

Case No. 2:25-cv-00242-PPS-AZ

PLAINTIFF'S CERTIFICATE OF GOOD FAITH / LOCAL RULE 37-1 MEET AND CONFER

Dear Counsel:

I am writing to you in good faith pursuant to Federal Rule of Civil Procedure 37(a)(1) and Northern District of Indiana Local Rule 37-1 to address the severe deficiencies in Trans Union LLC's Responses to Plaintiff's First Request for Production of Documents, dated April 24, 2026, as well as non-compliance with the rules governing pro se litigation in this matter.

I. Preliminary Matter: Non-Compliance with Pro Se Discovery Filing Rules

As a preliminary matter, Plaintiff understands that the Court directed during the parties' conference that discovery involving a pro se litigant be filed on the public docket. To date, Trans Union has served its discovery responses via email but has not filed those materials on the record.

Plaintiff has filed her written discovery responses and is currently preparing her production materials for filing. However, because the parties' productions contain sensitive personal, financial, and potentially confidential information, Plaintiff is also preparing an appropriate protective order and/or redaction protocol consistent with the Court's directives and privacy concerns associated with public filing.

Notably, Trans Union's production consisted solely of correspondence and dispute response letters previously sent to Plaintiff, while withholding the internal corporate records, procedures, investigative materials, audit trails, and system data directly relevant to Plaintiff's claims and Defendant's compliance obligations under

the FCRA. Plaintiff reserves all rights regarding the adequacy and completeness of Defendant's production.

II. Substantive Deficiencies in Document Production

Regarding the substance of the production, Trans Union's responses rely on repetitive, generic boilerplate objections claiming that nearly every request is "overbroad," "unduly burdensome," or "seeking trade secrets." The Seventh Circuit and federal courts within this Circuit have repeatedly held that boilerplate discovery objections are improper and may result in waiver where objections are not stated with specificity.

Furthermore, Trans Union's reliance on a single packet of documents (pages TU-000001 through TU-000417) to answer dozens of distinct, highly specific requests is legally evasive under FRCP 34. Trans Union only provided the standard dispute letters that were mailed to me during the consumer dispute process and nothing else. This does not satisfy your production obligations.

Plaintiff demands that Trans Union amend its responses and produce the actual underlying responsive documents for the following categories:

1. Deficiency in Evasive Referrals to Standard Dispute Letters (Requests No. 1, 2, 3, 4, 7, 9, 12, 14, 23, 29, 38, 39, and 42)

Trans Union limited its production exclusively to standard consumer correspondence. However, Requests No. 12 and 38 seek the internal identification of the specific employees or third-party contractors who supposedly conducted the reinvestigations. Requests No. 14, 29, and 42 demand the actual electronic data transmissions (including CDVs, ACDVs, UDFs, AUDFs, and matching metadata/furnisher attachments) exchanged between Trans Union and data furnishers (MOHELA, Discover, Exeter, Credit Acceptance).

The Necessity: These internal background electronic communications and data logs do not exist within standard consumer dispute letters. They are strictly necessary to evaluate whether Trans Union performed a legally adequate reinvestigation under 15 U.S.C. § 1681i.

2. Withholding of Vital Compliance Manuals and Training Materials (Requests No. 6, 10, 11, 25, 34, and 36)

Trans Union explicitly states that "responsive materials are being withheld" under the guise of proprietary trade secrets.

The Necessity: In an FCRA action under 15 U.S.C. § 1681e(b), the core issue is whether Trans Union maintained "reasonable procedures." It is impossible for Plaintiff to challenge those procedures without reviewing the written policies, software/matching logic (Request No. 8), data archiving rules (Request No. 13), and training modules governing how Trans Union handles pro se disputes and identity theft blocks. Federal courts have recognized that internal policies, procedures, and compliance materials may be discoverable in FCRA litigation where directly relevant to the claims and defenses at issue. A ny legitimate commercial secrecy concerns can be fully managed by a Standard Protective Order rather than total nonproduction.

3. Responses Regarding Willfulness (Requests No. 16, 18, 19, 28, 30, and 40)

Trans Union objects that terms regarding investigator speed/quotas or data monetization are "vague." These requests seek information directly relevant to proving a "willful" violation under 15 U.S.C. § 1681n for punitive damages. Trans Union is obligated to conduct a good-faith search based upon a reasonable interpretation of industry terms.

4. Student Loan Reporting (Request No. 45)

Trans Union states that no records exist because the U.S. Department of Education never advised them that Plaintiff's student loans were discharged. This response appears inconsistent with the reporting history and surrounding circumstances alleged in this case. Plaintiff requests written confirmation that Trans Union conducted a comprehensive search of all systemic logs, automated queues, and governmental reporting channels to verify why this documentation was unacted upon.

5. Insufficient Production of Financial Condition Documents (Requests No. 17 and 43)

In response to requests seeking documents relevant to punitive damages and Trans Union's financial condition, Trans Union directed Plaintiff to publicly available investor-relations materials rather than producing responsive documents.

Plaintiff's requests seek responsive records within Trans Union's possession, custody, or control, including authenticated financial records sufficient to evaluate

Trans Union's current financial condition for purposes relevant to punitive damages under the FCRA. General references to external investor materials do not fully respond to the specific requests propounded.

Accordingly, Trans Union must supplement its responses with responsive, authenticated documents sufficient to identify its current financial condition and net worth.

CONCLUSION

To avoid unnecessary litigation and burdening the Court, I request that Trans Union review its position, supplement the deficiencies identified above within seven (7) business days of this correspondence.

This correspondence is sent in good faith pursuant to FRCP 37(a)(1) and Local Rule 37-1 in an effort to resolve these discovery disputes without court intervention.

If Defendants refuse to supplement their production or maintain their objections, Plaintiff will seek appropriate relief from the Court, including a Motion to Compel.

I look forward to your prompt response.

Sincerely,

Asanti Rodgers

Plaintiff, Pro Se

Exhit C

VIA EMAIL TO ALL COUNSEL OF RECORD

June 5, 2026

Quilling Selander Lownds Winslett & Moser, P.C.

Attn: Nermy Winner & Scott Brady


RE: Plaintiff's Good-Faith Response to Discovery Deficiency Letter from Transunion

Case Name: ASANTI RODGERS v. TRANSUNION, LLC, et al.

Court: U.S. District Court for the Northern District of Indiana

Civil Action No.: 2:25-cv-00242-PPS-AZ


Dear Nermy Winner,

I am writing in response to your letter concerning Defendants' Interrogatories and Requests for Production. As a pro se litigant, I have participated in the discovery process in good faith, providing substantial documentation to support my claims. While I maintain my valid objections to Defendants' overbroad and invasive demands, I am providing the following clarifications and supplemental positions to narrow any perceived disputes.

I. Plaintiff's Clarifications and Supplemental Responses

**Interrogatory No. 1: Social Security Number**

Plaintiff objects to providing her full Social Security number in discovery because the information is already within Defendant's possession, custody, or control.

During the course of this litigation, Plaintiff submitted a consumer disclosure request through AnnualCreditReport.com using her Social Security number, name, address, and other identifying information. Experian and Equifax responded to that request, while TransUnion did not. Accordingly, Defendant has not demonstrated that production of Plaintiff's Full Social Security number in discovery is necessary to identify Plaintiff or locate her consumer file.

Additionally, Plaintiff has repeatedly provided identifying information throughout the dispute process and this litigation, including her name, address history, and other personal identifying information. Defendant has not established any legitimate need for Plaintiff to reproduce information that is already available through Defendant's own records and prior submissions.

Interrogatory No. 2: 10-Year Address History

Plaintiff has acted in good faith by providing her known residential history for the past ten (10) years, including interim addresses. Plaintiff resided at the Gary, Indiana address for several years, entered into a lease for a residence in Houston, Texas, and spent time in both Houston and Gary during that period before ultimately returning to Gary, Indiana, where she presently resides. To the extent exact move-in and move-out dates are requested, Plaintiff has provided the dates to the best of her present recollection.

Regarding the Gary, Indiana address, Plaintiff clarifies that her residency at that address totals approximately ten (10) years, excluding periods during which she maintained or occupied the Houston residence. The exact numerical calendar date of her initial residency at the Gary address is outside of Plaintiff's current recollection. Under the Federal Rules of Civil Procedure, a party is only required to provide information within her personal knowledge, custody, or control. Plaintiff cannot be compelled to speculate or fabricate an exact date that she does not recall. The historical address information already provided is accurate and complete to the best of Plaintiff's present recollection.

Interrogatory No. 3 & Request for Production No. 13: Income and Employment History

Plaintiff has already provided her employment history, including identification of Amazon Flex, Uber, and Lyft, the periods worked, the nature of the work performed, and the compensation structure. Plaintiff has also produced Forms 1099 reflecting her earnings during the relevant periods.

Plaintiff has no responsive federal income tax returns available for production for the time period requested and therefore has no responsive federal income tax returns in her possession, custody, or control. The Lyft and Uber Forms 1099 constitute the best available earnings records within Plaintiff's possession, custody, or control.

Defendants cite Poulos v. Naas Foods, Inc. to argue that tax and financial information is discoverable when a plaintiff claims lost income. Demanding further, repetitive, or employment-specific employer addresses beyond these official tax records is duplicative, burdensome, and unnecessary to substantiate the lost income claim.

Interrogatory No. 16 & Request for Production No. 16: Monthly Bank and Credit Card Statements

Plaintiff is not presently in possession, custody, or control of any credit card statements. Plaintiff's only known credit card account during the relevant period was a Self Credit Builder account. Plaintiff does not possess any statements for that account and does not currently have access to the account records.

Bank Statements: Plaintiff objects to the request for five (5) years of personal bank statements as overbroad, intrusive, and not proportional to the needs of this case under Federal Rule of Civil Procedure 26(b)(1). Defendants contend that these records are necessary to evaluate Plaintiff's credibility and identity theft claims. Plaintiff disagrees. The identity theft underlying the disputed accounts predates the January, February, and March 2025 disputes that form the basis of this action. Plaintiff has already produced and identified the materials directly relevant to those disputes, including dispute correspondence, identity theft documentation, and other supporting records. Additionally, Plaintiff's personal bank statements do not provide a complete or accurate measure of her earnings. During the relevant periods, Plaintiff earned income as an independent contractor through rideshare platforms and frequently utilized rideshare payment cards and other payment methods. As a result, bank deposits alone do not accurately reflect Plaintiff's earnings. Plaintiff has already produced Lyft and Uber Forms 1099, which constitute the most accurate and reliable earnings records within her possession, custody, and control. Defendants have not identified any specific transaction, account, disputed tradeline, or time period requiring review. Instead, Defendants seek wholesale disclosure of years of private financial transactions unrelated to whether Defendants conducted a reasonable reinvestigation of Plaintiff's disputes. Plaintiff therefore maintains her objection to the production of five years of personal banking records.

Request for Production No. 19: Prior Credit Reporting Litigation Documents

Plaintiff objects to this request to the extent it seeks documents that are matters of public record and equally accessible to Defendants, including the Discover Bank litigation previously identified by case number.

Without waiving this objection, Plaintiff has disclosed her litigation history to the extent relevant. Plaintiff further notes that the Credit Acceptance arbitration involves multiple parties, including entities that are not parties to this action, and concerns separate claims and legal theories beyond the Fair Credit Reporting Act claims asserted against Defendants in this case. The arbitration does not concern TransUnion's reinvestigation obligations under the FCRA. Defendants have not identified any specific arbitration document relevant to the claims or defenses at issue here and have not explained why wholesale production of the arbitration file is relevant or proportional to the claims and defenses in this action. Instead, Defendants appear to seek production of an entire separate proceeding. Accordingly, Plaintiff objects on the grounds of relevance, overbreadth, and proportionality under Rule 26(b)(1).

II. Defendants' Material Non-Compliance

While Defendants insist on absolute compliance and heavily critique Plaintiff's discovery responses, Defendants have completely ignored Plaintiff's formal Notice of Deficiencies sent to counsel. Plaintiff granted Defendants a reasonable period of seven (7) days to supplement their incomplete production and address their boilerplate objections regarding internal reinvestigation

logs, dispute files, consumer disclosure histories, and communications with third-party furnishers.

Defendants failed to respond, failed to request an extension, and continue to withhold the core evidence central to this statutory action. Discovery is a reciprocal process under the Federal Rules; Defendants cannot demand extensive supplementation from Plaintiff while declining to address their own discovery deficiencies.

Plaintiff remains willing to meet and confer in good faith regarding any legitimate discovery dispute. However, if Defendants continue to withhold responsive materials and refuse to address the deficiencies identified by Plaintiff, court intervention may become necessary.

III. Conclusion

Plaintiff has clarified the status of the requested credit card records and tax returns, supplemented her address recollection to the best of her ability, and established that her Forms 1099 have already been produced. Plaintiff maintains her objection to producing five years of private, line-item bank statements for the reasons stated above.

If Defendants continue to withhold their mandatory dispute and reinvestigation files, Plaintiff will be forced to present these issues directly to the Court in her upcoming separate status report and via a formal Motion to Compel Discovery under FRCP Rule 37.

Sincerely,

ASANTI RODGERS

Plaintiff, Pro Se

Exhibit D

VIA ELECTRONIC MAIL
TO: Neil R. Peluchette
For: Equifax Information Services
Taft Stettinius & Hollister LLP
npeluchette@taftlaw.com

DATE: 06/08/2026

RE: Asanti Rodgers v. TransUnion, LLC, et al.

Case No. 2:25-cv-00242-PPS-AZ

PLAINTIFF'S INITIATION OF LOCAL RULE 37-1 MEET AND CONFER

Counsel,

Pursuant to Northern District of Indiana Local Rule 37-1, this letter serves as my formal effort to resolve major discovery deficiencies prior to seeking court intervention. Your responses to my First Requests for Admission (RFAs, First request for interrogatories and First Requests for Production (RPDs), served on May 15, 2026, are legally insufficient, contradictory, and evasive.

Furthermore, you remain in direct violation of this Court's express order requiring all discovery requests and responses to be filed directly on the court docket due to my pro se status. I demand that Equifax supplement its responses to the following items within seven (7) days:

1. The Corporate Overlap Contradictions (RFAs 4, 5, 6, 7 and RPDs 1, 3, 5)

You objected to RFAs 4, 5, 6, and 7 regarding shared corporate systems, infrastructure, and policies with your parent company, Equifax Inc., claiming they are "vague" and "unintelligible". You also completely refused to search for or produce documents regarding your organizational structure (RPD 1), shared services (RPD 3), and overlapping personnel (RPD 5) on the exact same grounds.

These objections are completely frivolous and made in bad faith. In your response to RFA No. 26, you explicitly admitted under oath that "individuals employed by Equifax Inc. participated in decisions to verify, maintain, or continue reporting accounts associated with Plaintiff." In RFA No. 27, you admitted parent company personnel communicated with me regarding my disputes. You cannot block document production and refuse to answer system questions by claiming parent company operations are irrelevant, while simultaneously admitting under oath that

parent company employees were hands-on in managing my specific credit file. Supplement these responses and produce these records immediately.

2. The Identity Theft and File Documentation (RFA 3 and RPD 19)

In RFA No. 3, you state you lack information sufficient to admit or deny whether I provided you with my Social Security Card, Driver's License, and an FTC Identity Theft Report as of February 22, 2025. Under FRCP 36(a)(4), you are required to check your own readily obtainable records. These documents were uploaded directly into your system.

Furthermore, in RPD No. 19, you object to producing my complete "Full File," audit trails, or access logs, claiming you "no longer maintain audit trails." Yet, in RFA No. 13, you admit that on February 22, 2025, you told me you were going to contact third-party furnishers to verify my data. It is legally impossible to run an FCRA-compliant reinvestigation without accessing, using, and logging data from a consumer's file. Produce the file and database logs.

3. The MOHELA / Department of Education Discharge (RFAs 17 and 18)

You claim you lack information to admit or deny receiving electronic or written notification from the U.S. Department of Education in 2024 regarding the discharge of my student loan accounts (MOHELA), or whether you failed to update them. Electronic data transmissions from major federal furnishers are core business records that are easily searchable within your databases. A reasonable inquiry under Rule 36 requires review of readily obtainable business records.

4. Retaining Fraudulent Accounts on My File (RFAs 19 and 20)

You claim you lack information to admit or deny whether inaccurate or fraudulent accounts remained present on my report as of May 2025, claiming you do not keep copies of reports sent to third parties. These requests do not ask about third parties; they ask about the data you maintained on my file after I disputed it. You are fully capable of auditing your own internal database history to confirm whether those accounts were deleted or retained.

regarding RFA 26 and RFA 27:

Equifax's admissions that employees of Equifax Inc. participated in decisions regarding Plaintiff's accounts and communicated with Plaintiff concerning her disputes render its objections to Requests concerning corporate structure, shared

systems, overlapping personnel, and parent-company involvement unsustainable. Equifax cannot simultaneously admit direct involvement by Equifax Inc. personnel while refusing discovery concerning the nature and extent of that involvement.

### 5. Deficient Responses to Requests for Production

Equifax's responses to Plaintiff's Requests for Production are deficient because Equifax repeatedly asserted boilerplate objections and, in numerous instances, explicitly admitted that it did not conduct any search for responsive documents. This failure to conduct a reasonable search is inconsistent with a responding party's obligations under the Federal Rules of Civil Procedure.

Specifically, Equifax stated that it "has not searched for documents responsive" to numerous requests, including requests seeking documents concerning organizational structure, shared services, parent-company involvement, internal databases, breach-related records, Plaintiff's affected-consumer status, security incident records, third-party data access, data use, and revenue or financial benefit derived from Plaintiff's personal information.

These requests are directly relevant to Plaintiff's claims because Plaintiff alleges that Equifax Inc. and Equifax Information Services operate through shared systems, centralized data infrastructure, parent-company involvement, and consumer data practices that directly affected Plaintiff's consumer file, disputes, identity-theft documentation, and personal information.

Equifax's refusal to search for these records is particularly problematic when compared against its other discovery responses.

### A. The Corporate Overlap Contradiction

Equifax cannot refuse to search for documents concerning corporate structure, shared systems, and parent-company involvement (RPD Nos. 1, 3, 4, 5, and 7) on relevance grounds while simultaneously admitting in Requests for Admission Nos. 26 and 27 that Equifax Inc. personnel participated in decisions concerning Plaintiff's accounts and communicated with Plaintiff regarding her disputes. Equifax cannot admit involvement by Equifax Inc. personnel while refusing to search for documents concerning the operational relationship, authority, systems, and decision-making structure that permitted such involvement.

### B. The Lost File and Missing Audit Trail Contradiction

In response to RPD Nos. 19 and 40, Equifax objects to producing system access logs, Full File data, and tracking metadata, asserting that it no longer maintains audit trails. However, in Request for Admission No. 13, Equifax admits that on or about February 22, 2025, it informed Plaintiff that reinvestigations were being initiated with third-party furnishers, while simultaneously admitting in Request for Admission No. 1 that Plaintiff was told Equifax was unable to locate her consumer file.

Plaintiff is entitled to discover how Equifax tracked, processed, investigated, and communicated regarding Plaintiff's disputes during a period when Equifax claims Plaintiff's consumer file could not be located. If Equifax maintains that responsive audit logs, access records, tracking information, or metadata do not exist, it should expressly state that position after a reasonable inquiry and explain what records, if any, were used to process Plaintiff's disputes.

C. Incomplete Production of Dispute Communications

In response to RPD Nos. 11, 13, 33, and 34, Equifax appears to limit production to generic dispute-file materials. However, standard dispute-file printouts do not necessarily include the complete underlying communications, electronic transmissions, ACDVs, CDVs, e-OSCAR communications, metadata, or related records exchanged with furnishers.

Plaintiff seeks the complete communications and records relating to the investigation of disputed accounts, including communications concerning the U.S. Department of Education and MOHELA accounts, rather than summaries or excerpts selected by Equifax.

Equifax cannot avoid production through generalized objections while declining to conduct a reasonable search. If Equifax contends that responsive documents do not exist, it must clearly state that position after a reasonable inquiry. If responsive documents are being withheld based upon privilege, confidentiality, burden, proportionality, or any other objection, Equifax must identify the basis for withholding with specificity and produce a privilege log where applicable.

Accordingly, Plaintiff requests that Equifax supplement its responses by:

1. Identifying with specificity which requests were searched for responsive documents;
2. Identifying which requests were not searched and the basis for declining to conduct a search;

3. Producing all non-privileged responsive documents;
4. Identifying all documents withheld on the basis of privilege, confidentiality, burden, or proportionality and providing a privilege log where applicable;
5. Producing responsive documents concerning Plaintiff's consumer file, file history, dispute history, identity-theft documentation, ACDV/CDV/e-OSCAR communications, system records, access records, furnisher communications, Department of Education and MOHELA records, human-trafficking documentation policies, and Equifax Inc./EIS shared systems and parent-company involvement.

Plaintiff further requests supplementation as to Requests for Production Nos. 1, 3, 4, 5, 7, 8, 10, 11, 13, 19, 20, 21, 25, 33, 34, 38, 40, 45, 46, 47, 48, 49, and 50 because those requests seek documents central to Plaintiff's claims and Defendants' defenses.

If Equifax maintains that it does not possess, maintain, or control certain documents, it must clearly state that position after a reasonable search and identify whether responsive documents are maintained by Equifax Inc., Equifax Information Services, any affiliate, vendor, shared system, or third-party platform involved in processing Plaintiff's consumer file or disputes.

6. Deficient Responses to Interrogatories

A. Bad-Faith Refusal to Search and Corporate Contradictions (Interrogatories Nos. 1, 2, 3, 16, 17, 20, and 23)

Equifax expressly states that it "will not search for and produce any information or documents in response" to these interrogatories. A party may not avoid answering interrogatories by simply refusing to conduct a reasonable inquiry into information available to it. Equifax must answer based upon information known or reasonably available after a reasonable investigation.

Furthermore, this refusal is maintained despite Equifax's own admissions. In Interrogatories Nos. 1, 2, and 3, Equifax refuses to identify entities, personnel, and individuals involved in maintaining Plaintiff's file and handling Plaintiff's disputes. Yet in Requests for Admission Nos. 26 and 27, Equifax admitted under oath that individuals employed by Equifax Inc. participated in decisions concerning Plaintiff's accounts and communicated with Plaintiff regarding her disputes. Equifax cannot simultaneously admit that such individuals exist and participated in decisions

affecting Plaintiff while refusing to identify them or answer interrogatories concerning their roles, authority, and involvement.

B. Case-Specific Evasions and the "Unable to Locate File" Contradiction (Interrogatory No. 6)

Interrogatory No. 6 seeks the specific steps taken to investigate Plaintiff's disputes, the individuals involved, and the decisions made concerning Plaintiff's accounts.

Instead of providing a case-specific response, Equifax supplied a generic description of its ordinary dispute procedures applicable to consumers generally. This response is evasive and nonresponsive.

Equifax previously admitted that on or about February 22, 2025, it informed Plaintiff that it was unable to locate Plaintiff's consumer file. Having admitted that its systems could not locate Plaintiff's file during the relevant period, Equifax cannot satisfy Interrogatory No. 6 by merely describing its standard procedures. Plaintiff is entitled to know what specific actions were taken concerning her actual disputes, who performed those actions, what information was reviewed, and how decisions were made while Equifax claimed Plaintiff's file could not be located.

C. Improper Reliance on Rule 33(d) (Interrogatories Nos. 4, 5, 8, 10, 11, 12, 13, 14, 15, 18, 21, and 24)

Equifax repeatedly invokes Rule 33(d) while failing to identify specific Bates-numbered documents from which the requested information may be derived.

Rule 33(d) requires a responding party to specify records in sufficient detail to permit the requesting party to locate and identify the responsive information as readily as the responding party. General references to "documents produced herewith," unspecified policies and procedures, or unidentified corporate records do not satisfy Rule 33(d).

To the extent Equifax intends to rely on Rule 33(d), it must identify the specific Bates-numbered documents responsive to each interrogatory and identify where within those documents the responsive information can be located.

D. Core Dispute and Decision-Making Information (Interrogatories Nos. 7–15 and 24)

Interrogatories Nos. 7, 8, 9, 10, and 11 seek information directly relating to Equifax's reinvestigation of Plaintiff's disputes, including communications with furnishers, ACDVs, CDVs, e-OSCAR transmissions, verification materials, and Department of Education communications.

Interrogatories Nos. 12, 13, 14, 15, and 24 seek factual explanations concerning Equifax's handling of Plaintiff's identity theft claims, requests for human trafficking documentation, account classifications, and decisions regarding disputed accounts.

These interrogatories seek factual information central to Plaintiff's Fair Credit Reporting Act claims. They do not seek privileged communications, attorney mental impressions, or legal conclusions. Equifax must provide factual responses identifying the specific reasons for its decisions, the individuals involved, the information relied upon, and the documents supporting those decisions.

Accordingly, Plaintiff requests that Equifax supplement its responses to Interrogatories Nos. 1 through 24 by:

1. Conducting a reasonable inquiry and providing all responsive information available to Equifax, including information reasonably available through affiliated entities involved in Plaintiff's file and dispute handling.
2. Identifying the names, job titles, employers, and roles of all individuals involved in handling Plaintiff's consumer file, disputes, investigations, and communications with Plaintiff, including the Equifax Inc. personnel referenced in Requests for Admission Nos. 26 and 27.
3. Providing complete narrative responses detailing the actual actions taken concerning Plaintiff's disputes and consumer file.
4. Identifying specific Bates-numbered documents whenever Rule 33(d) is invoked.
5. Producing supplemental responses free from unsupported boilerplate objections.

If Equifax contends that responsive information does not exist, Equifax should expressly state that fact after conducting a reasonable inquiry rather than refusing to search for responsive information.

7. Reservation of Rights

Plaintiff further notes that the ongoing discovery disputes, repeated failures to provide complete responses, and continued withholding of information central to

Plaintiff's claims have contributed to significant stress during the course of this litigation. Plaintiff has sought medical evaluation during this period for symptoms she believed required medical attention.

Nothing contained in this correspondence should be construed as a waiver of any claim for emotional distress, physical manifestations of stress, actual damages, statutory damages, punitive damages, or any other relief available under applicable law. Plaintiff expressly reserves all rights.

Plaintiff requests that Equifax fully supplement the deficient Requests for Admission, Interrogatories, Requests for Production, and Initial Disclosures identified above within seven (7) days of receipt of this letter.

If Equifax fails to provide complete supplementation or otherwise fails to engage in a meaningful effort to resolve these deficiencies, Plaintiff will consider the parties to be at an impasse and will seek appropriate relief from the Court pursuant to Federal Rule of Civil Procedure 37 and Northern District of Indiana Local Rule 37-1, including an order compelling discovery and any other relief the Court deems just and proper.

Respectfully,

ASANTI RODGERS
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, I served a true and correct copy of the foregoing Plaintiff's Separate Status Report and it's Exhibits upon counsel via electronic mail.

Via Email:
Defendant Equifax, Inc and Equifax
Information Services, LLC
Neil R. Peluchette,
Taft Stettinius &amp; Hollister, LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
npeluchette@taftlaw.com

Defendant Transunion, LLC
Scott E. Brady and Nermy J. Winner,
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
E-Mail: sbrady@qslwm.com
E-Mail: nermy.winner@qslwm.com

Asanti Rodgers, Pro Se
1128 Burr St,
Gary, IN 46406
24princesslove@gmail.com